UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RUSSELL MARTIN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. SA-11-CA-00768-FB |
| | § | |
| CITY OF SAN ANTONIO | § | |
| Defendant | § | |

PLAINTIFF MARTIN'S MOTION FOR
<u>SUMMARY JUDGMENT AND BRIEF IN SUPPORT</u>

Plaintiff, through undersigned counsel, moves for summary judgment in the above-referenced case.  In brief, Plaintiff has sued Defendant City of San Antonio (COSA, Defendant or the City) for having wrongfully terminated his employment in violation of federal and state law.  For purposes of this motion, Plaintiff contends that there are no disputed fact issues on the questions of whether (1) his termination violated his procedural rights under the Due Process Clause of the Fourteenth Amendment to the U. S. Constitution and (2) whether such termination was in compliance of TEX. GOV'T CODE § 614.023.  Accordingly, Plaintiff requests that the Court enter summary judgment against Defendant.  In support of his motion, Plaintiff would show the following:

I.      **Factual Background**

On April 15, 2009, Plaintiff Martin filed suit in a Texas state court complaining that Defendant wrongfully terminated his employment.  At a later date, Defendant removed Plaintiff's suit to this federal court.  Plaintiff Martin complains that he suffered retaliation and was wrongfully terminated from his employment with Defendant because he reported his supervisor for committing theft and/or fraud and because he refused his supervisor's instructions to retaliate against another employee after she complained of

discrimination.  Plaintiff alleges that Defendant COSA violated Plaintiff's rights under TEXAS LABOR CODE § 21.055, TEX. GOV'T CODE § 554.007, TEX. GOV'T CODE § 614.023 and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

Plaintiff submits separately his Appendix in Support of Plaintiff Russell Martin's Motion for Summary Judgment.  Such appendix identifies the factual evidence and describes Plaintiff's version of the facts which show that there are undisputed facts and that Plaintiff is entitled to summary judgment as a matter of law.    The Sworn Declaration, Deposition Transcripts, documents, and the Statement of Undisputed Facts are incorporated by reference into this Response as though set forth verbatim at this point.

Plaintiff Martin moves for summary judgment on two issues.  First, Plaintiff contends that the undisputed facts show that the post-termination procedures afforded to him are inconsistent with the requirements of the Due Process Clause.  More specifically, Plaintiff maintains that when a public entity deprives a public employee of a constitutionally protected property interest (public employment) through pretermination procedures that satisfy the bare minimum under *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532 (1985), the employee is entitled to a fuller, more comprehensive post-termination hearing that is meaningful.  That is, to comply with due process, such post-termination hearing must, at a minimum, include a final decisionmaker who hears the evidence and relies upon such evidence to determine whether the charges against a dismissed employee are true and warranted dismissal.  Plaintiff submits that for the

reasons stated below, Defendant's post-termination procedures violated Plaintiff Martin's due process rights.

Second, Plaintiff argues that the summary judgment evidence shows that his termination was in violation of TEX. GOV'T CODE § 614.023. More specifically, § 614.023 bars a local government, such as Defendant, from disciplining a peace officer based on a complaint of misconduct unless the peace officer is provided a copy of the complaint within a reasonable time after the complaint is filed and such complaint is investigated. The undisputed evidence establishes that Defendant did not serve a copy of such a complaint on Plaintiff Martin within a reasonable time and never investigated such complaint.

Briefly, Plaintiff contends that Defendant's own documentary evidence establishes that he is entitled to summary judgment based on the following undisputed facts:

1.     Plaintiff Martin was a long term employee of Defendant's Aviation Police Department.

2.     Plaintiff Martin was a public employee and a civil servant whose terms of employment were subject to Defendant's Municipal Civil Service Rules.

3.     Plaintiff Martin was a law enforcement officer and a peace officer as that term is defined in Texas law.

4.     Defendant could not terminate Plaintiff's employment without good cause and in compliance with Defendant's rules and regulations.

5.     On or about March 1, 2008, Plaintiff sent a disrespectful email to his supervisor, Lt. John Gruchacz.

6.     Because of Plaintiff's March 1, 2008, Lt. Gruchacz requested on March 7, 2008 that an Internal Affairs investigation be opened into Plaintiff Martin's conduct.

7.     For more than 3 months Lt. Gruchacz request for an Internal Affairs remained pending.

8.     Such delay was unusual and not consistent with other requests for investigation of other airport police employees.

9.     On March 18, 2008, Plaintiff Martin complained in writing that his supervisor, Sgt. Battles, was committing theft and/or fraud for reporting hours worked that he did not work.

10.     As a result of Plaintiff Martin's complaint, Defendant opened an Internal Affairs investigation into Plaintiff's complaint on March 20, 2008.

11.     On June 13, 2008, the Internal Affairs investigator completed his report and found that there was sufficient information to conclude that Sgt. Battles had indeed committed theft and/or fraud and the report was submitted to Airport Chief of Police Ron Bruner.

12.     On June 17, 2008, Plaintiff learned that he was being assigned to work under Sgt. Battles.

13.     Plaintiff requested to meet with Lt. Gruchacz and such meeting took place on June 18, 2008.

14.     At the meeting, Plaintiff expressed his fear of retaliation.

15.     Plaintiff denies making a threat against Sgt. Battles or expressing hatred toward him.

4

16.     When expressing his fear of retaliation, Plaintiff stated that he was afraid that there might be "fisticuffs or shooting" if he and Sgt. Battles were assigned to work together.

17.     On June 19, 2008, Lt. Gruchacz reported Plaintiff Martin's statements to Chief Bruner.

18.     Although Lt. Gruchacz noted in his memo that immediate attention should be placed on Plaintiff's statements, he did not request that an Internal Affairs investigation be opened.

19.     Lt. Gruchacz also did not report Plaintiff's allegedly threatening statements to Human Resources or complied with Defendant's procedures for addressing threats of violence in the workplace.

20.     Chief Bruner also took no immediate action against Plaintiff Martin.

21.     Defendant did not remove Plaintiff Martin from the workplace.

22.     Defendant did not require Plaintiff Martin to submit to a psychological evaluation.

23.     Defendant did not take away Plaintiff Martin's weapon.

24.     On June 24, 2008, Chief Bruner requested that an Internal Affairs investigation be opened into Lt. Gruchacz's complaint about Plaintiff Martin's disrespectful March 1, 2008 email.

25.     Eventually, the Internal Affairs investigation of the disrespectful email was completed and the investigator concluded that Plaintiff Martin had acted inappropriately and violated Department rules.

26.     Both Plaintiff Martin's and Sgt. Battle's disciplinary cases were presented to the Airport Advisory Action Board.

27.     The Board recommended that Plaintiff be suspended for 3 days and that Sgt. Battles be suspended for 10 days.

28.     At a later date, on September 24, 2008, Chief Bruner reduced Sgt. Battle's suspension from 10 days to 5 days.

29.     On September 29, 2008, Chief Bruner recommended to the Aviation Director that Plaintiff's employment be terminated because, among other things, Plaintiff had violated Defendant's policy of violence in the workplace.

30.     On November 18, 2008, Defendant notified Plaintiff for the first time that his employment would be terminated for, among other things, having made an allegedly threatening comment in the workplace.

31.     On that same day, Defendant placed Plaintiff on administrative leave.

32.     Plaintiff timely responded to the Notice of Proposed Termination of Employment.

33.     Defendant did not respond to Plaintiff's response.

34.     On December 9, 2008, Defendant terminated Plaintiff's employment.

33.     Plaintiff timely requested a hearing before Municipal Civil Service Commission regarding his termination.

34.     Over a 2 day period, the Commission heard testimony from Plaintiff, Lt. Gruchacz, Chief Bruner, Sgt. Battles, Lt. Richard Griffin who was the Internal Affairs investigator, and other persons.

35.     On February 20, 2009, the Commission recommended that Plaintiff be reinstated in his job because the evidence and testimony did not support termination and Plaintiff's allegedly threatening remarks, while inappropriate, were a not threat to any individual.

36.     On March 18, 2009, City Manager Sculley overruled the Commission and upheld Plaintiff's termination.

37.     City Manager Sculley did not attend Plaintiff's hearing.

38.     City Manager Sculley did not hear the tapes of Plaintiff's hearing.

39.     City Manager Sculley did not read the transcripts of Plaintiff's hearing.

40.     City Manager Sculley did not question any of the parties involved in the complaint against Plaintiff.

## II.     Standard for Summary Judgment

Summary Judgment procedure is not "a disfavored procedural shortcut," but rather "an integral part of the Federal Rules of Civil Procedure". <u>Celotex</u> *Corp. v. Catrett*, 477 U.S. 317 (1986).  It enables litigants to secure a just, speedy and inexpensive determination of every action.  *Id.*

Summary judgment is appropriate when the pleading and evidence on file, viewed in the light most favorable to the United States, "show that there is not genuine issue as to any material fact and that Plaintiffs are entitled to judgment as a matter of law." Fed. R. Civ. P. (56); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex*, 477 U.S. 317 (1986). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the United States.  *Anderson*, 477 U.S. 242 at 248.

Once the movant shows that "there is an absence of evidence to support" the United States' case, the United States must come forward with significant probative

evidence showing a triable issue of fact. *Celotex, supra* 477 U.S. 317, 325 (1986); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). The movant must designate specific facts showing there is a genuine issue for trial. Conclusory allegations and denials, hearsay statements, speculation, and other evidence not admissible at trial are insufficient to get the United States "past the summary judgment hurdle." *Garcia v. Reeves County, Tex.*, 32 F.3d 200, 204 (5th Cir. 1994). The non-movant may not rest upon the allegations or denial of its pleadings or assertions unsupported by facts. *Anderson*, 477 U.S. 242 (1986); *Celotex*, *supra* 106 S. Ct. at 2553. The non-movant must adduce evidence, not merely argument, in response to the movant's properly supported Motion for Summary Judgment. *See Foval v. First Nat'l Bank of Commerce in New Orleans*, 841 F. 2d 126, 129 (5th Cir. 1988); *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1995 (5th Cir. 1996). Rather, the United States must present sufficient competent evidence such that a jury could reasonably find in its favor. *See Anderson*, 477 U.S. at 251.

### III.    Argument

#### A.  Defendant COSA's termination of Plaintiff's employment violated Plaintiff's procedural rights under the Due Process Clause of the Fourteenth Amendment to the U. S. Constitution

Section 1983 creates a cause of action against any person who, under color of law, "subject or causes to be subjected," a person to the deprivation of a constitutional right. 42 U.S.C. § 1983. Plaintiff Martin was a long term employee of the Defendant's Airport Police Department subject to the rules and procedures set forth in the Municipal Civil Service Rules of the City of San Antonio. Exh. 1 (Decl. of Russell Martin); Exh. 4 (Municipal Civil Service Rules); Exh. 5 (COSA Administrative Directive No. 4.11).

Further, as a peace officer, Plaintiff Martin was afforded additional protections by statute. Exh. 1 (Decl. of Russell Martin); TEX. GOV'T CODE § 614.023.   Therefore, it is undisputed that Plaintiff Martin had a constitutionally protected interest in his position as an airport police officer.

In *Cleveland Board of Education v. Loudermill*, the Supreme Court held that a public employee who holds a constitutionally protected interest in his job must be granted a hearing before being terminated.   470 U.S. 532 (1985).   This requirement protects employees from an erroneous discharge.   The right to a hearing derives from the Fifth and Fourteenth amendment to the United States Constitution.   *Id* 542, 545-546.

The requisite procedural safeguards mandated by the Due Process Clause depend upon a balancing of the competing interests at stake. *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). *Schaper v. City of Huntsville*, 813 F.2d 709 (5th Cir. 1987).   Elaborate pretermination proceedings are not mandated because of the excessive burden they would put "on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 105 S. Ct. at 1495-96. But in the event of minimal pretermination safeguards, the substantial private interest one has in not being deprived of his livelihood requires a fuller, more comprehensive and meaningful hearing after termination that is within a reasonable time. *Id*. at 1496 (emphasis added); see, e.g., *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). "At some point, a delay in the post-termination hearing would become a constitutional violation." *Loudermill*, 105 S. Ct. at 1496; see *Barry v. Barchi*, 443 U.S. 55, 66 (1979).

The pretermination hearing "need not be elaborate" and  can be "something less than a full evidentiary hearing."  *Loudermill*, 470 U.S. at 545.  The pretermination need

not "definitively resolve the propriety of the discharge.  It is an initial check against mistaken decisions--essentially, a determination is made of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  *Id*. at 545-546.   For purposes of this motion, Plaintiff Martin challenges the post-termination hearing process.  He does not dispute that he received a minimal pretermination notice and opportunity to respond.  Plaintiff Martin would show that the undisputed evidence establishes that the City deprived him of a meaningful post-termination hearing.

Although the Fifth Circuit has not elaborated on the requirements of a post-termination hearing, other courts have provided guidance on the rights involved.  Due process requires that a discharged employee's post-termination hearing be substantially more "meaningful". At a minimum, this requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him. *Sutton v. Cleveland Bd. Of Educ.*, 958 F.2d 1339, 1349 (6th Cir. 1992).  The severity of depriving a person of the means of livelihood requires that such person have at least one opportunity for such a full hearing, so that he may challenge the factual basis for the state's action and may provide  reasons why that action should not be taken.  *Id.*  A person has the right to confront and cross-examine one's accuser.  *Adams v. Sewell*, 946 F.2d 757, 765 (11th Cir. 1991).   An employee has the right to a neutral decision maker in the post-termination review.  *Farhatt v. Jopke*, 370 F.3d 580, 595-596 (6th Cir. 2004); *Walker v. City of Berkeley*, 951 F.2d 182, 184 (9th Cir. 1991); see, also, *Schaper v. City of Huntsville*, 813 F.2d 709 (5th Cir. 1987)(bias of decision maker is

permitted at pretermination stage because employee offered post-termination review before a different body).

In the present case, the City Manager is the final decision maker in the post-termination hearing process.  Exh. 4 (Municipal Civil Service Rules); Exh. 33 (S. Sculley Deposition Excerpts) 6:12-13.  The City Manager, however, does not actually conduct a full evidentiary hearing.  Exh. 4 (Municipal Civil Service Rules).  Instead, that function is delegated to the Municipal Civil Service Commission.  *Id*.  The MCS Commission is the entity that actually hears testimony, reviews documents, weighs credibility and considers the arguments from the parties' lawyers.  *Id*.

After receiving the notice of employment termination, Plaintiff Martin timely requested a hearing with the Municipal Civil Service (MCS) Commission so that it would consider his termination.  Exh. 29.  At the same time, he identified a list of witnesses that needed to be subpoenaed by the Commission.  *Id.*  On December 16, 2008, the MSC Commission advised Plaintiff Martin that it would hear its case on February 19, 2009.  Exh. 30.  Over the course of two days, February 19-20, 2009, the MCS Commission heard testimony, reviewed documents and heard arguments from the parties' lawyers.  On February 20, 2009, the MCS Commission concluded that "the evidence and testimony do no support termination."   Exh. 31 (Municipal Civil Service Commission Recommendation).  The MCS Commission found that Plaintiff Martin's June 18, 2008 comments concerning "fisticuffs" and "shooting" were inappropriate "but were not a threat to any individual."  *Id.*  The MCS Commission found that the City did not truly believe that Plaintiff Martin's comments were a threat because it took an inordinate amount of time to address the issue.  *Id.*  The MCS Commission recommended that

Plaintiff Martin be suspended for 3 days for the March 1, 2008 email and for 5 days for his June 18, 2008 comments.  Finally, the MCS Commission recommended that Plaintiff Martin be reinstated to his position with Defendant.

The MCS Commission clearly did not believe Martin's comments were a threat because of the lengthy delay by Defendant in responding to the alleged threat.  Had it been actually been a credible threat, as Defendant contends, Defendant was required by its own internal procedures to take certain actions to protect other city employees and the general public. Exh. 20 (City of San Antonio Admin. Directive 4.80 Violence in the Workplace); Exh. 33 (S. Sculley Deposition) 37:20-22; Exh. 17 (J. Gruchacz Depo.) at 53-57:2-1.  Defendant did not request Plaintiff Martin to submit to a psychological evaluation.  Exh. 17 (J. Gruchacz Depo.) at51:18-20.  Defendant did not remove Plaintiff Martin's weapon.  Exh. 17 (J. Gruchacz Depo.) at53-57: 2-1.  Defendant did not suspend Plaintiff Martin or otherwise try to remove him from the workplace.  Exh. 17 (J. Gruchacz Depo.) at53-57: 2-1.  Defendant did nothing for five (5) months, when it served Plaintiff Martin with its Notice of Proposed Termination.  Exh. 21 (Notice of Proposed Termination); Exh. 22 COSA Memo dated October 16, 2008).

After the conclusion of the hearing, the MCS Commission also recommended to the City Manager that Martin's employment not be terminated but that he be suspended for three (3) days for his email and five (5) days for his inappropriate comment.  The findings and recommendation were forwarded to the City Manager.

At a later date, on March 18, 2009, City Manager Sheryl Sculley rejected the MCS Commission's recommendation and upheld Plaintiff's termination.  Exh. 32 (S. Sculley's Memo dated March 18, 2009).  As per city policy, the City Manager reviews

the recommendation of the MCS Commission on employee terminations.  *See* Exh. 4 (Municipal Civil Service Rules) at 28; Exh. 5 (Administrative Directive No. 4.11); Exh. 33 (S. Sculley Deposition) 5:4-8.   The City Manager does not sit on the MCS Commission that hears testimony and reviews the evidence concerning Defendant's decision to terminate a city employee.  Exh. 33 (S. Sculley Deposition) at 5:9-15.  City Manager Sculley did not attend the MCS Commission hearing that heard testimony on Plaintiff's job termination.  *Id.* at 29:1-3.  City Manager Sculley did not interview Lt. Gruchacz, who heard Plaintiff's allegedly threatening statements, to determine the context of such statements.  *Id.* at 21:3-5; 25:8-11.  City Manager Sculley did not listen to the tapes of the MCS Commission hearing in Plaintiff's case.  *Id.* at 29-30:4-17.   City Manager Sculley did not review a transcript of the sworn testimony in Plaintiff's MCS Commission hearing.  *Id.* at 29-31:18-25.  City Manager Sculley had no opportunity to evaluate the demeanor and truthfulness of the witnesses at Plaintiff's MCS Commission hearing.  *Id.*  City Manager Sculley learned about the facts from talking to other city employees, including Mr. Sawaya who made the final decision to terminate Plaintiff.  *Id.*  Mr. Sawaya, however, never interviewed Plaintiff Martin, Lt. Gruchacz or anyone with firsthand knowledge about the allegations made against Plaintiff Martin.  Exh. 28 (M. Sawaya Depo.) at 39-40:22-11.   Although she understood that Chief Bruner was the motivating actor in Plaintiff's termination and had failed to comply with the city's policy against violence in the workplace, City Manager Sculley never asked Chief Bruner, or Aviation Director Sawaya, why Plaintiff was being terminated given the circumstances surrounding his complaint that his supervisor had committed a crime.  *Id.* at 34-35:14-11.

The City Manager deprived Plaintiff Martin of his post-termination due process because the City Manager did not personally conduct an evidentiary hearing and instead rejected the MCS Commission's findings of fact without cause.  The MCS Commission found the alleged statements of "fisticuffs or shooting" were inappropriate but not a credible threat.  Exh. 31 (Municipal Civil Service Commission Recommendation)  The City Manager concluded the opposite, that being the statements alleged to have been made by Plaintiff Martin were a credible threat – "the threat is still a threat."  Exh. 32 (S. Sculley's Memo dated March 18, 2009); Exh. 33 (S. Sculley Deposition Excerpts) 25-26: 6-16; 33-34: 21-17.

Having delegated the fact-finding role to the MCS Commission, the City Manager must give some deference to the commission's findings.  The City's administrative rules are silent on the standard of review to be given by the City Manager to the MCS Commission's findings of fact.  Case law also appears to be silent on the issue.  However, due process mandates that the employee be afforded a full evidentiary post-termination hearing when the employer utilizes an abbreviated pretermination process, as here.  The final decision maker, being the City Manager, delegated the fact finding role to MCS Commission.  She does not hear testimony or weigh the credibility of the witnesses.  Importantly, she does not receive a complete record of the hearing before the MCS Commission.  Having delegated this function to the commission, the City Manager cannot simply reject the commission's findings without a reason.  To do so would render meaningless the MCS Commission hearing.

Guidance may be obtained from the termination/non-renewal procedures utilized by Texas school districts.  After being notified of the proposed non-renewal of the

teaching contract, a teacher, upon request, is afforded a hearing before the school board. TEX. EDUC. CODE § 21.207(a).  The school board is given two chioices:  namely, conduct the hearing itself or opt to have a hearing examiner conduct the hearing.

If the school board elects the first choice, the board conducts its own owning and renders a decision.  TEX. EDUC. CODE § 21.207(b), 21.208(b).  A teacher may appeal the board's decision to the Commissioner of Education but the commissioner may not substitute his or her judgment for that of the board "unless the board's decision was arbitrary, capricious, unlawful, or not supported by substantial evidence."  TEX. EDUC. CODE § 21.209.

If the school board elects to have a hearing examiner, then the school board requested the Commissioner of Education appoint an independent hearing examiner to conduct an evidentiary hearing and make findings of fact, conclusions of law, and a recommendation on the proposed non-renewal to the board.  TEX. EDUC. CODE § 21.257. The hearing examiner sends a copy of his written report to the school board, the commissioner and the teacher.  *Id.*  The school board may accept the examiner's findings, conclusion and recommendation.  The board may reject the examiner's findings only after reviewing the record of the proceedings and only if the finding of fact is not supported by substantial evidence.  TEX. EDUC. CODE § 21.259(c).  The board is required to state in writing the reason for rejecting or changing the finding.  TEX. EDUC. CODE § 21.259(d).

If the school board opts for the hearing examiner, the board is not permitted to make findings, resolve conflicts in the evidence or make credibility determinations. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 564 (Tex. 2000).  Such functions

are within the province of the factfinder – the independent hearing examiner who received the evidence and heard the testimony. *Id*. "Having chosen to delegate the factfinding role to the hearing examiner, a board cannot then ignore those findings with which it disagrees and substitute its own additional findings." *Id*. The board may only reject or change a hearing examiner's findings when those findings are not supported by substantial evidence. *Id*.

The same reasoning applies to the instant case. Plaintiff Martin's substantial private interest in not being deprived of his livelihood required a *full hearing* after termination that was meaningful. *Loudermill*, at 1496 (emphasis added). Plaintiff Martin was entitled to subpoena witnesses to testify, confront his accuser, and challenge the evidence against him. Importantly, Plaintiff Martin was entitled to exercise his right to persuade the decision maker to exercise her discretion not to terminate. Having opted to delegate the fact-finding process to MSC Commission, the City Manager should not be free to reject the commission's findings without any sort of legal or factual basis or simply because she disagrees with the factual conclusions. The City Manager admitted that she did not attend the hearing, did not interview the key witnesses, did not review the transcript of the hearing and did not have the opportunity to assess the credibility of the witnesses. Exh. 33 (S. Sculley Deposition) at 5:9-15; 29-30:4-17; 29-30:4-17; 29-31:18-25. Even the City Manager acknowledges that "I never said I was a better judge." Exh. 33 (S. Sculley Deposition Excerpts) 31: 17-21. Despite her lack of information, the City Manager dismissed the MSC Commission's finding that the threat was not credible and rejected the commission's recommendation to reinstate Plaintiff Martin.

Under the system used by the City, there was no meaningful post-termination review because the decisionmaker did not have sufficient evidence before her to consider whether the charges against the dismissed employee were true and warranted dismissal. Nor did the decisionmaker give any deference to the factual findings made by the only tribunal that received the evidence, heard the testimony and weighed credibility of the witnesses. The undisputed evidence establishes that the City violated Plaintiff Martin's due process rights by depriving him of a meaningful post-termination hearing; Plaintiff Martin is entitled to summary judgment as a matter of law.

**B.   Defendant COSA violated Plaintiff's due process rights by failing to adhere to Tex. Gov't Code § 614.023.**

The disciplinary and termination procedures against Plaintiff are also governed, in part, by Section 614.023 of the Texas Government Code.

Tex. Gov't Code § 614.023 provides, in pertinent part, as follows:

(a)   A copy of a signed complaint against … a peace officer appointed or employed by a political subdivision of this state *shall* be given to the officer or employee *within a reasonable time* after the complaint is filed. (emphasis added).

(b)  Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.

(c)  In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:

(1)  the complaint is investigated; and

(2)  there is evidence to prove the allegation of misconduct.

Plaintiff Russell Martin is a peace officer as that term is defined in under Texas law. See EXh. 2 (COSA Letter dated May 30, 1989). Compliance with Tex. Gov't Code

§ 614.023 is mandatory.  *See City of Seagoville v. Lytle*, 227 S.W.3d 401, 4011 (Tex. App. Dallas 2007) (holding that compliance with section 614.023 of the Texas Government Code delineates the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion).  Further, any allegation of misconduct for which disciplinary action may be imposed represents a complaint, regardless of the source.  *See Treadway v. Hoder*, 309 S.W.3d 780, 784 (Tex. App. Austin 2010).

In analyzing alleged violations of *Fourteenth Amendment* right to due process claims, it must be determined whether Plaintiff was deprived of a protected interest, and, if so, what process was his due.  *See Logan v. Zimmerman Brush Co*., 455 U.S. 422, 428 (1982).

A property interest can be created by state law.  *Town of Castle Rock, Colo v. Gonzales*, 545 U.S. 748 (2005).  In the present case, Tex. Gov't Code § 614.023 creates a protectable property interest.  *Turner v. Perry*, 278 S.W.3d 806, 822 (Tex. App. Houston 14th Dist. 2009).  In the absence of complaints conveyed in the manner set out by statute, Plaintiff Martin had a legitimate expectation of continued employment secured by *sections 614.021-023 of the Texas Government Code*.  *Id.*

If a protected interest exists, then the process required to protect that interest must be determined.  "By enacting sections 614.021-023, of the Government Code, the State provided covered employees with procedural safeguards to reduce the risk that adverse employment actions would be based on unsubstantiated complaints.  Moreover, the State determined that the value of these protections outweighs the fiscal and administrative burdens incurred by complying with statutory requirements."  *Turner v. Perry*, 278

S.W.3d at 823 (Tex. App. Houston 14th Dist. 2009).  Failure to follow such statutory safeguards potentially impairs a Plaintiff's ability to investigate or defend against the complaints made against him.  *See Id*.  Further, the City of San Antonio's failure to follow statutory procedure magnified the risk that adverse employment action would be taken against Plaintiff based on unsubstantiated complaints.  *See Id*. at 824.

As reflected by its own terms, Tex. Gov't Code § 614.023 mandates that complaints against a peace officer shall be presented to him within a reasonable time. The purpose of such safeguard is not only to allow the peace officer an opportunity reasonably defend against such charges, but to ensure that the charges are not based on unsubstantiated complaints.  In the present case, even though a complaint was made regarding Plaintiff's allegedly violent statements on June 19, 2008 by Lt. Gruchacz to Airport Police Chief Bruner (See Exh. 19), Defendant COSA did not put Plaintiff on notice of such complaint until it issued Plaintiff its Notice of Proposed Termination of Employment on November 18, 2008 – some five months after the fact.  See Exh. 1 at ¶ 26, Exh. 21 and Exh. 22.  Throughout such time, despite the allegation of violence, and as stated in this motion, Defendant did not remove Plaintiff's weapon, remove Plaintiff from the workplace, require Plaintiff to submit to a psychological exam, nor contact human resources to investigate the alleged workplace violence.

It is undisputed that Defendant COSA waited five months to bring the complaint to the attention of Plaintiff.  Defendant COSA's belated attempt to resuscitate the alleged violence claim against Plaintiff just to include it in a Notice of Proposed Termination of Employment fails both the mandatory terms and the spirit of Tex. Gov't Code § 614.023. Such delay is unreasonable and, therefore, constitutes a failure to comply with Tex. Gov't

Code § 614.023.  Such failure to comply with the statute falls short of the due process required by the statute for the protected interest at issue. *See Turner*, 278 S.W.3d at 824 (court denied defendant city's motion for summary judgment regarding Plaintiff's Fourteenth Amendment claims based on violation of Tex. Gov't Code §§ 614.022 and 614.023).  Therefore, Defendant COSA has failed to afford due process to Plaintiff Martin's protected property right.

**C.   Defendant COSA violated Plaintiff's statutory rights afforded by Tex. Gov't Code § 614.023.**

In his petition, Plaintiff has sought reinstatement of his employment.  As set out herein, Defendant COSA has violated Tex. Gov't Code § 614.023 by failing to provide to Plaintiff the complaint against him which resulted in disciplinary action within a reasonable time.  Violations of Tex. Gov't Code § 614.023 may afford a plaintiff the right to seek reinstatement of his employment. *Cf. City of Seagoville v. Lytle*, 227 S.W.3d 401, 412 (Tex. App. Dallas 2007) (court held that the city defendant could not maintain a defense of governmental immunity on plaintiff's request for withdrawal of a disciplinary action and reinstatement of employment for alleged violations of Sections 614.022 and 614.023 of the Texas Government Code).  Plaintiff therefore seeks a summary judgment on his claim for reinstatement of employment based on violation of the state statute.

**VI.   Conclusion**

For the reasons set forth above and the appendix filed herewith, Plaintiff respectfully requests that the Court grant the Motion, enter an order and judgment finding for Plaintiff, and set the matter for a hearing on damages.

Respectfully submitted,

GONZALEZ & OTERO, LLC
110 Broadway St., Ste. 510
San Antonio, Texas 78205
(210) 587-4000
(210) 587-4001 fax

LAW OFFICE OF JAVIER N. MALDONADO
110 Broadway St., Ste. 510
San Antonio, Texas 78205
(210) 277-1603
(210) 587-4001 (facsimile)


By:____/s/_____
      Juan M. Gonzalez
      State Bar No. 24002158
      Javier N. Maldonado
      State Bar No. 00794216

      ATTORNEYS FOR PLAINTIFF


**Certificate of Service**

    I hereby certify that on the 5th day of December, 2012, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Defendant's counsel, Deborah Lynne Klein, Office of the City Attorney, Litigation Division, 111 Soledad, 10th Floor, San Antonio, Texas 78205.

          _____/s/_____
          Juan Gonzalez

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **RUSSELL MARTIN,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **NO. SA-11-CA-00768-FB** |
| | § | |
| **CITY OF SAN ANTONIO** | § | |
| **Defendant** | § | |

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiff's Motion for Summary Judgment and brief in support thereof. Having considered the motion and summary judgment evidence presented therein, the Court finds that such motion should be GRANTED and judgment should be had against Defendant CITY OF SAN ANTONIO as follows:

a.      That Defendant is liable to Plaintiff on his claims of violation of procedural rights under the Due Process Clause of the Fourteenth Amendment to the U. S. Constitution and violation of rights afforded by TEX. GOV'T CODE § 614.023.

b.      That Plaintiff is entitled to reinstatement of his position with the same pay and grade due to Defendant's violation of TEX. GOV'T CODE § 614.023

By separate order, the Court will set a hearing on damages on this cause.


SIGNED AND ENTERED THIS ___ DAY OF _____, 201__


_____
UNITED STATES DISTRICT JUDGE